UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re LAVERNE E. CAMPBELL-LODGE,                    Case No. 25-22026-shl

                    Debtor.                                                Chapter 7

-----------------------------------------------------------------X
**LONG ISLAND MINIMALLY**                                  **ADVERSARY COMPLAINT**
**INVASIVE SURGERY, P.C.,**
**d/b/a NEW YORK BARIATRIC GROUP,**              REQUEST FOR
                                                                                       DETERMINATION OF
                Plaintiff-Creditor,                            DISCHARGEABILITY
                                                                                       OF DEBT
    -against-

**LAVERNE E. CAMPBELL-LODGE,**                        Adv. Proc. No. _____

                **Defendant-Debtor.**
-----------------------------------------------------------------X

      Plaintiff-Creditor, Long Island Minimally Invasive Surgery, P.C. d/b/a New York Bariatric Group (the "Plaintiff" or "LIM"), by its attorneys, Sahn Ward Braff Coschignano PLLC, as and for its Complaint against Defendant-Debtor, Laverne E. Campbell-Lodge (the "Defendant" or "Laverne Campbell-Lodge"), alleges as follows:

      1.     At all times hereinafter mentioned, Plaintiff-Creditor, LIM, was and still is a professional corporation, organized and existing under and by virtue of the laws of the State of New York, with a principal place of business located at 125 Mineola Avenue, Suite 200, Roslyn Heights, New York 11557.

      2.     Upon information and belief and at all times hereinafter mentioned, Defendant-Debtor, Laverne Campbell-Lodge, was and is still a resident of the State of New York, residing at 812 Tulip Drive, Valley Cottage, New York 10989.

      3.     This Adversary Proceeding was commenced in conjunction with Defendant's

Voluntary Petition for Chapter 7 relief filed in this Court on January 13, 2025.

4. Plaintiff brings this proceeding to obtain an Order and Judgment declaring that Defendant's debt to Plaintiff is not dischargeable pursuant to *11 U.S.C. §§523(a)(2), 523(a)(4), 523(a)(6)* and for such other, further and different relief as this Court deems just, proper and equitable under the circumstances, including but not limited to an award of attorneys' fees as provided for in the underlying agreements.

5. This Court has jurisdiction over this Adversary Proceeding pursuant to this Court's core subject matter jurisdiction under *28 U.S.C. §157(b)(2)(1)*.

6. Plaintiff has standing, as Defendant's creditor, to object to discharge of Debtor's obligation to Plaintiff pursuant to *11 U.S.C. §727(c)(1)*.

7. Prior to filing said Petition, Defendant became indebted to Plaintiff on or about January 25, 2022 when Defendant fraudulently induced Plaintiff into performing elective medical procedures on Defendant, at Defendant's special instance and request, between January 2022 through April 2022 ("the relevant period") without requiring advanced payment therefore. *(See Assignment of Insurance Benefits and Right of Recovery Form, attached hereto as Exhibit "1"; Patient Financial Responsibility Form, attached hereto as Exhibit "2"; Invoices, attached hereto as Exhibit "3")*

8. More particularly, Defendant fraudulently induced Plaintiff into performing the aforementioned services without requiring advanced payment therefore under false pretenses and by falsely representing that she would collect and immediately forward all checks she received from her insurance company for said medical procedures to Plaintiff within seven (7)

2

days of receipt, in addition to paying any co-payments, co-insurance, deductibles and other sums due pursuant to the terms of her insurance agreement, and thereafter embezzled said funds by depositing the insurance checks into her own personal checking account and/or retaining said funds for her own personal use, injuring Plaintiff, while continuing to solicit Plaintiff's services. *(See Exhibits 1-3)*

9. More particularly, as an out-of-network provider, Defendant was responsible for paying Plaintiff fair market value for the services rendered ***prior*** to Plaintiff performing any services. *(See Exhibits 1-2)*

10. To induce Plaintiff into performing the aforementioned elective professional medical procedures on Defendant without requiring advance payment in full therefore, Defendant promised to forward all checks received from her insurance company onto Plaintiff within seven (7) days of receipt along with all co-payments, coinsurance and deductibles due pursuant to the terms of her insurance contract. *(See Exhibits 1-2)*

11. To induce Plaintiff into performing the aforementioned elective professional medical procedures on Defendant without requiring advanced payment therefore, Defendant executed an Assignment of Insurance Benefits and Right of Recovery Form ("AOB") wherein she assigned all rights and interest in any insurance checks received for the services to be rendered to her over to Plaintiff and promised to immediately indorse and forward said checks onto Plaintiff along with all other sums for which she was responsible upon receipt. *(See Exhibit 1)*

12. To induce Plaintiff into performing the aforementioned elective professional

3

medical procedures on Defendant without requiring advanced payment therefore, Defendant executed a Patient Financial Responsibility Form ("PFRF") acknowledging her ultimate responsibility to remit payment for the services provided to her and agreeing to be liable for Plaintiff's court costs, reasonable attorneys' fees and interest at a rate of twelve percent (12%) per annum in the event of a default of her obligations thereunder. *(See Exhibit 2)*

13. Defendant never had any intention of forwarding said insurance payments onto Plaintiff nor did she have any intention of forwarding the other sums due onto Plaintiff.

14. Defendant's fraudulent intent cannot be disputed herein as Defendant continued to solicit Plaintiff's services after receiving and cashing the insurance checks issued to pay for Plaintiff's services all while continuing to represent to Plaintiff that said insurance checks would be forwarded.

15. Indeed, it was solely by virtue of Defendant's actual fraud, fraudulent misrepresentations, fraudulent pretenses, embezzlement and/or larceny that Plaintiff was induced into performing said elective medical procedures whereby she fraudulently represented that she would and did assign her rights and/or interest in any checks received by her from the insurance company for the purpose of said medical procedures in addition to remitting payment for all co-payments, co-insurance, deductibles and other sums due pursuant to the terms of Defendant's insurance contract without any intention of doing so. *(See Exhibits 1-3)*

16. Defendant was unquestionably aware of her obligations to Plaintiff herein before any services were rendered as she was advised that she would be required to pay for the

4

services to be rendered in full in advance of said procedures being performed but for her promise to immediately forward any checks she received from her insurance company for the services rendered by Plaintiff onto Plaintiff in addition to remitting payment for all co-payments, co-insurance, deductibles and other sums due pursuant to the terms of Defendant's insurance contract. *(See Exhibits 1-3)*

17.    Defendant was unquestionably aware of her obligations to Plaintiff herein before any services were rendered as she was advised both in writing, as per the Agreements, and orally of her obligations to pay for all charges in excess of the sums actually paid to Plaintiff pursuant to the insurance policy, including co-payments, co-insurance, and deductibles. *(See Exhibits 1-2)*

18.    Defendant knew that Plaintiff had agreed to perform and did perform said medical procedures based solely upon her fraudulent misrepresentations, false pretenses and/or actual fraud in inducing Plaintiff to perform said procedures without requiring advanced payment therefore.

19.    That invoices for the medical procedures were remitted to the insurance company for said services on Defendant's behalf. *(See Exhibit 3)*

20.    That the insurance company did issue several checks directly to Defendant for payment of Plaintiff's services as Plaintiff is an out-of-network provider.

21.    That all checks sent directly to Defendant were accompanied by an Explanation of Benefits which stated the dates of service, the services performed and the names of the doctors who performed said services and also advised Defendant as to what co-payments, co-

5

insurance, and/or deductible were due.

22. That, at the time Defendant received said checks, Defendant was fully aware of the fact that she was obligated to forward onto Plaintiff the checks she received from her insurance company for the services provided by Plaintiff in addition to remitting payment for all co-insurance and deductibles due.

23. Defendant was fully aware of the fact that Plaintiff would be injured if she failed to forward onto Plaintiff the checks she received from her insurance company for the services provided by Plaintiff and/or remit payments for any co-insurance, co-payments and/or deductibles due.

24. That, despite said knowledge, Defendant willfully, intentionally, deliberately and maliciously deposited said checks that she knew belonged to Plaintiff into her own personal checking account rather than forwarding the same onto Plaintiff.

25. That, instead of forwarding said checks to Plaintiff, Defendant knowingly, willfully, intentionally, deliberately and maliciously deposited said checks into her own personal checking account, exercising dominion over Plaintiff's right in the insurance monies, which constitutes conversion.

26. That, instead of remitting payment for all co-insurance and deductibles due, Defendant knowingly, willfully, intentionally, deliberately and maliciously withheld said payments, along with said checks, which constitutes malicious injury to Plaintiff.

27. Plaintiff contacted Defendant each time Plaintiff learned that Defendant had received an insurance check intended for Plaintiff and advised Defendant that she must

6

immediately turn over the checks she had received from the insurance company to Plaintiff as said funds belonged to Plaintiff, not Defendant, along with all other sums due.

28. That, Defendant knew when she willfully, intentionally, deliberately and maliciously deposited these checks into her personal checking account, rather than forwarding them onto Plaintiff, that she was committing actual fraud against Plaintiff.

29. That, Defendant knew when she continued to solicit Plaintiff's services after depositing these insurance checks into her personal checking account, rather than forwarding them onto Plaintiff, that it was only by her false representations and upon false pretenses that she would immediately forward the insurance checks received onto Plaintiff along with all other sums due that Plaintiff agreed to continue to provide services to Defendant.

30. That, Defendant knew when she willfully, intentionally, deliberately and maliciously deposited these checks into her personal checking account, rather than forwarding them onto Plaintiff, that she was committing embezzlement against Plaintiff.

31. That, Defendant knew when she willfully, intentionally, deliberately and maliciously deposited these checks into her personal checking account, rather than forwarding them onto Plaintiff, that she was committing larceny against Plaintiff.

32. That, Defendant knew when she willfully deposited these checks into her personal checking account, rather than forwarding them onto Plaintiff, that she was converting Plaintiff's assets.

33. That, Defendant intended to commit willful and malicious injury to Plaintiff's property rights therein by depositing these checks into her personal checking account rather

than forwarding them onto Plaintiff along with all other sums due.

34. That, Defendant's fraudulent intent may not be disputed as she continued to solicit Plaintiff's services after she stole the first check and while she continued to steal checks despite affirmatively representing to Plaintiff that said checks would be forwarded onto Plaintiff.

35. Defendant is precluded from disputing her indebtedness to Plaintiff by virtue of her acknowledgment of her obligation to Plaintiff by listing Plaintiff as one of her creditors in Schedule E/F of Defendant's list of Creditors Who Have Unsecured Claims.

36. Defendant is further precluded from discharging Plaintiff's debt in bankruptcy where permitting such relief would controvert the very reason that Congress enacted *§523* — to ensure that relief in bankruptcy was only granted to honest debtors and so that dishonest debtor's were effectively punished for engaging in fraudulent conduct. Indeed, the underlying purpose of the fraud exception to discharge was to prevent a person from committing an actual fraud and then wiping away the resulting debt by filing for bankruptcy. See Grogan v. Garner, *498 U.S. 297, 287 (1991)*.

37. As a matter of public policy, this Court should not permit the dischargeability of such debts where the debtor fraudulently coerces a doctor into performing elective surgical procedures upon the fraudulent promise that she will immediately forward any and all checks received from the insurance company for said surgery to the doctor, and remit payment for all co-insurance and deductibles due, and then attempt to wipe away said debt while profiting from her fraud through the channels of bankruptcy where she not only received the *elective*

medical procedures that she never paid for, but she also made a profit by depositing the checks she received from the insurance company to pay for said services into her own personal checking account rather than forwarding said checks onto the doctor.

38. Put more simply, Defendant should not be permitted to avoid her obligations to pay for her elective medical procedures, enjoying all of the benefits from said medical procedures that she did not pay for, *and* then also be permitted to keep the money that the insurance company gave her to pay for said procedures under the shield of bankruptcy. Indeed, it was this very fraud that *11 U.S.C. §523* was enacted to prevent.

## AS AND FOR A FIRST CAUSE OF ACTION

39. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs "1" through "38", inclusive of this Complaint, with the same force and effect as if the same were fully set forth herein at length.

40. Although there is a general presumption that debts are dischargeable in bankruptcy, that presumption does not apply where a debtor's obligation arose as a result of the debtor's false representation, false pretenses, or actual fraud. *11 U.S.C. §523(a)(2)*.

41. The element of fraud may be implied from the surrounding circumstances as a fraudulent debtor is unlikely to admit their fraudulent intent. *See* <u>In re Lindsey</u>, *443 B.R. 808, 815 (B.A.P. 8th Cir. 2011), aff'd, 431 F. App'x 521 (8th Cir. 2011);* <u>Municipal Credit Union v. Brown (In re Brown)</u>, *55 B.R. 999, 1004 (Bankr. E.D.N.Y. 1986)*.

42. The phrase "false representation" in *11 U.S.C. §523(a)(2)* encompasses not only words and written language, but also includes any other conduct that amounts to an assertion

9

not in accordance with the truth, including a false representation by implication of a debtor's silence. See *In re Eisinger*, 304 B.R. 492 (M. D. Fla. 2003); see e.g., *In re Scarlata*, 127 B.R. 1004 (Ill. 1991), aff'd in part by 979 F.2d 521 (7th Cir. 1992).

43. Defendant in this case fraudulently misrepresented to Plaintiff that, if Plaintiff performed the aforementioned medical procedures on Defendant without requiring advanced payment therefore, she would forward any and all checks that she received from the insurance company for and associated with said procedures to Plaintiff and remit payment for all coinsurance and deductibles due.

44. Defendant falsely represented to Plaintiff that she would forward onto Plaintiff any checks she received from her insurance company for the services rendered and remit payment for all coinsurance and deductibles due with the intent to deceive Plaintiff.

45. Plaintiff reasonably relied upon Defendant's false representations that she would forward onto Plaintiff all insurance checks, coinsurance, and deductibles she received to Plaintiff's detriment as Plaintiff would have required advanced payment for said elective medical procedures but for Defendant's false representations.

46. Based solely upon Defendant's false pretenses and fraudulent misrepresentations — *that she would forward any and all checks she received from the insurance company for and associated with said medical procedures to Plaintiff along with all other payments due* — Plaintiff performed several medical procedures on Defendant without requiring advanced payment in full therefore.

47. Defendant committed actual fraud when she accepted monies from the insurance company intended to be payment for the medical procedures Plaintiff performed and thereafter retained said checks for her own personal use and failed to remit payment of the sums due pursuant to the terms of her insurance contract.

48. Defendant committed actual fraud when she deposited the checks issued by the insurance company to pay for the medical procedures performed by Plaintiff into her personal checking account and failed to remit payment of the sums due pursuant to the terms of her insurance contract.

49. Defendant's fraudulent intent may not be disputed herein as Defendant continued to solicit Plaintiff's services after she received and cashed the first insurance check issued to pay for Plaintiff's services while lying about having received said check and also falsely promising to forward said check onto Plaintiff despite having already stolen the same.

50. As a result of Defendant's fraudulent misrepresentations, false pretenses and actual fraud, Plaintiff has been injured in the sum of $199,415.37, plus court costs, reasonable attorneys' fees and interest from September 22, 2023 at 12% per annum pursuant to the terms of the AOB and PFRF. *(See Exhibits 1 and 2)*

51. As a result of the foregoing, Defendant's debt to Plaintiff is not dischargeable pursuant to *11 U.S.C. §523(a)(2)* since it was incurred as a result of Defendant's fraudulent misrepresentations, false pretenses and as a result of Defendant's actual fraud against Plaintiff.

## AS AND FOR A SECOND CAUSE OF ACTION

52. Plaintiff repeats, reiterates, and realleges each and every allegation contained in

Paragraphs "1" through "51", inclusive, with the same force and effect as though each were fully set forth herein at length.

53. Defendant's obligation to Plaintiff is similarly not dischargeable in bankruptcy because said debt was incurred as a result of Defendant's fraud and defalcation while acting in a fiduciary capacity on behalf of Plaintiff, in furtherance of embezzling the monies paid to Defendant by the insurance company which were to be immediately forwarded to Plaintiff, and in furtherance of Defendant's commission of a larceny against Plaintiff. *11 U.S.C. §523(a)(4)*.

54. Defendant breached her fiduciary obligation to Plaintiff by retaining the funds she received from the insurance company to pay for services rendered by Plaintiff for her own personal use and depositing the same into her own personal checking account rather than indorsing and forwarding the same onto Plaintiff as she was legally obligated to do.

55. Furthermore, the Southern District of New York has recognized and established that for debts arising out of embezzlement, there need not be a fiduciary relationship between the debtor and the creditor for embezzlement to be proven under *11 U.S.C. §523(a)(4)*. See *In re Bevilacqua, 53 B.R. 331, 334 (SDNY Bankr. 1985)*.

56. With regard to the language of *11 U.S.C. §523(a)(4)*, it has been found that "the phrase 'while acting in a fiduciary capacity' does not qualify the word embezzlement, or the new category larceny, and thus the coverage of §523(a)(4) is broadened in its application to nonfiduciaries." See *In re Graziano, 35 B.R. 589, 594 (EDNY Bankr. 1983)*.

57. As such, embezzlement under *11 U.S.C. §523(a)(4)* is nondischargeable

regardless of whether an actual fiduciary relationship existed.

58. Here, Defendant's obligation to Plaintiff was incurred as a result of Defendant's withholding, embezzling and/or misappropriating funds she received from the insurance company that she was holding for the benefit of Plaintiff and, instead of forwarding said funds directly to Plaintiff, as she was obligated to do, Defendant deposited said funds into her own personal checking account and converted Plaintiff's asset.

59. Defendant's obligation to pay Plaintiff was incurred as a result of Defendant stealing the funds and/or property of Plaintiff and/or misappropriating Plaintiff's assets that she was obligated to hold in trust for the benefit of Plaintiff, and by depositing said funds into her own personal checking account whereby she committed defalcation.

60. Defendant's obligation to Plaintiff was incurred as a result of Defendant's taking of the funds and/or property of Plaintiff with the intent of keeping said funds and/or property of Plaintiff as she deposited said funds into her own personal checking account.

61. As a direct and proximate result of Defendant's (a) fraud, embezzlement and larceny in the form of willfully and intentionally depositing the insurance checks into her own personal checking account instead of remitting them to Plaintiff and (b) failure to remit payment of the sums due pursuant to the terms of her insurance contract, Plaintiff has been injured in the sum of $ 199,415.37, plus reasonable attorneys' fees and interest from September 22, 2023 at 12% per annum, according to the terms of the AOB and PFRF.

62. The Bankruptcy Code provides that that no debt may be discharged where that debt was obtained by fraud or defalcation while acting in a fiduciary capacity, embezzlement

or larceny. *11 U.S.C. §523(a)(4).*

63. Accordingly, Defendant's debt to Plaintiff is not dischargeable in bankruptcy, pursuant to *11 U.S.C. §523(a)(4)*, as it was obtained solely by virtue of Defendant's fraud and defalcation, while acting in a fiduciary capacity on behalf of Plaintiff, in furtherance of embezzling the monies paid to Defendant by the insurance company which were to be immediately forwarded to Plaintiff and failure to remit payment of the sums due pursuant to the terms of her insurance contract, and in furtherance of Defendant's commission of a larceny against Plaintiff.

## AS AND FOR THE THIRD CAUSE OF ACTION

64. Plaintiff repeats, reiterates, and realleges each and every allegation contained in Paragraphs "1" through "63", inclusive, with the same force and effect as though each were fully set forth herein at length.

65. Defendant's obligation to Plaintiff is further not dischargeable in bankruptcy as it was obtained as a result of Defendant's willful and malicious injury to Plaintiff and its property, and in particular, its proprietary interest in the checks that Defendant received from the insurance company that she was obligated to forward to Plaintiff, as well as Plaintiff's interest in the copayments, coinsurance, and deductibles that were deducted from said payments as the same were Defendant's responsibility.

66. Like the aforementioned debts fraudulently obtained, *11 U.S.C. §523(a)(6)* provides that a debtor's obligation to a creditor is similarly not dischargeable where that obligation was incurred as a result of the debtor's willful and malicious injury to another entity

or the property of another entity.

67. Precedent dictates that where an "intentional breach of contract is accompanied by tortious conduct which results in willful and malicious injury, the resulting debt is excepted from discharge under §523(a)(6)." *See* *Diamond v. Kolcum (In re Diamond)*, 285 F.2d 822, 828 (9th Cir. 2002); *see* *also*, *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1205 (9th Cir. 2001), cert. denied 533 U.S. 930, 121 S. Ct. 2552 (2001).

68. It should similarly be noted that, upon adopting *11 U.S.C. §523(a)(6) [then § 523(a)(5)]*, the 1978 Legislative Reports illustrate that it was the Legislature's intent that this section *not only* pertain to willful or malicious injury but to also include willful or malicious conversion.

69. Defendant's debt to Plaintiff is not dischargeable herein as Defendant intentionally and deliberately intended to convert Plaintiff's assets for her own benefit, which caused Plaintiff injury. *In re Wisell*, 494 B.R. 23 (EDNY Bankr. 2011).

70. Defendant's debt to Plaintiff is not dischargeable as Defendant intended to convert Plaintiff's interest in the insurance checks she received for the services rendered by Plaintiff for her own benefit by depositing said checks into her own personal checking account and retaining said funds for her own personal use in addition to not remitting payment of the sums due pursuant to the terms of her insurance contract.

71. Defendant's debt to Plaintiff is not dischargeable herein as Defendant deliberately and intentionally stole the insurance checks issued to pay for Plaintiff's services by depositing said checks into her own personal checking account and retaining said funds for

15

her own personal use in addition to not remitting payment of the sums due pursuant to the terms of his insurance contract.

72. Defendant's actions were intentional and deliberate as Defendant knew at the time she deposited said checks into her own personal checking account that she was morally and contractually obligated to forward said checks onto Plaintiff in addition remitting payment of the sums due pursuant to the terms of his insurance contract.

73. Defendant knew she was committing a deliberate wrongdoing when she knowingly and intentionally converted Plaintiff's assets by depositing the insurance checks, intended to pay Plaintiff for the services it rendered, into her personal checking account and retaining said funds for her own personal benefit in addition to failing to remit all other sums due pursuant to the terms of her insurance contract.

74. Defendant intentionally breached her contractual obligations to Plaintiff when she knowingly and deliberately deposited the insurance checks she received to pay for Plaintiff's services into her own personal checking account rather than forwarding them onto Plaintiff as she was contractually obligated to do along with all other sums due pursuant to the terms of her insurance contract.

75. Defendant's act of depositing into her own personal checking account the checks issued by her insurance company to pay for Plaintiff's services rendered and failing to remit all other sums due was wrongful and without just cause or excuse.

76. Defendant's debt to Plaintiff is not dischargeable herein as Defendant was aware of her contractual obligation to forward onto Plaintiff all checks received by her insurance company for the services rendered by Plaintiff as well as all other sums due when she deposited

16

said funds into her own personal checking account and failed to forward said sums onto Plaintiff. In re Stelluti, 94 F.3d 84, 87-88 (2d Cir. 1996).

77. Plaintiff's injuries were caused herein by Defendant's intentional and deliberate act of depositing the checks intended to pay Plaintiff for the services it rendered into her own personal checking account and thereafter retaining said funds for her own personal use and failing to remit payment of the foregoing and all other sums due. In re Stelluti, supra at 87-88.

78. Defendant's obligation to Plaintiff arose as a result of Defendant's willful injury to both Plaintiff and Plaintiff's propriety interest in the checks that Defendant received from the insurance company, which Defendant fraudulently misrepresented to Plaintiff that said checks would be immediately forwarded to Plaintiff and which Defendant assigned all rights therein to Plaintiff as well as her failure to remit all other sums due pursuant to the terms of her insurance contract.

79. Defendant knowingly misled and deceived Plaintiff into performing medical services on Defendant without requiring advanced payment therefore and intentionally breached her agreement with Plaintiff by not forwarding the insurance monies and other sums due upon receipt of payment and the Explanations of Benefits from her insurance carrier.

80. Defendant's debt herein arose as a result of Defendant's willful and malicious conversion of Plaintiff's proprietary interest in the insurance checks issued for medical services rendered by Plaintiff to Defendant that Defendant deposited into her own personal checking account rather than forwarding to Plaintiff, as she was contractually obligated to do along with remitting payment for all other sums due.

81. Plaintiff had an immediate right to the insurance checks, coinsurance and

deductibles due as per Plaintiff's agreement with Defendant.

82. Plaintiff demanded from Defendant the turnover of said sums to Plaintiff, to no avail other than hollow promises that the checks would be delivered to induce Plaintiff into performing additional elective medical procedures on Defendant.

83. Defendant appropriated Plaintiff's property right in the insurance monies and other sums due for her own beneficial use and exercised dominion over the same by depositing the same into her own personal bank account and failing to tender the same to Plaintiff, to the exclusion of Plaintiff's right over it, which constitutes conversion.

84. Defendant acted in conscious disregard of her duties without just cause, which constitutes malicious behavior.

85. Defendant intentionally took advantage of her position in receiving the insurance checks directly, by depositing the funds into her own account and using the same for her own personal benefit and failing to remit payment of all sums due.

86. Defendant knew that she was failing to uphold her duty under her agreement with Plaintiff and that her behavior would be injurious to Plaintiff.

87. Defendant deliberately refused to turn over the insurance monies and all other sums due, even after due demand from Plaintiff, while depositing the same into her personal bank account for her own personal use and failing to remit all co-insurance and deductibles due, knowingly, and fully expecting that her actions would cause economic harm to Plaintiff.

88. Defendant's diversion of Plaintiff's property into her own bank account is conclusive of maliciousness.

89. As a result of Defendant's willful and malicious conduct against Plaintiff,

Plaintiff has been injured in the sum of $199,415.37, plus reasonable attorneys' fees and interest from September 22, 2023 at 12% per annum, according to the terms of the AOB and PFRF.

90.    Accordingly, since Defendant's obligation to Plaintiff arose as a result of her willful breach of her agreement with Plaintiff and subsequent conversion, and since said actions resulted in willful and malicious injury to Plaintiff and its proprietary interest in the monies Defendant received from the insurance company, Defendant's debt to Plaintiff is exempted from discharge pursuant to *11 U.S.C. §523(a)(6).*

**WHEREFORE,** Plaintiff, Long Island Minimally Invasive Surgery, P.C. d/b/a New York Bariatric Group, respectfully requests that this Court enter judgment as follows:

(i)    On the First Cause of Action, that the debt that the Defendant, Laverne Campbell-Lodge, owes the Plaintiff is not dischargeable pursuant to *11 U.S.C. §523(a)(2)* as her debt was obtained as a result of her false representations, false pretenses and actual fraud against Plaintiff;

(ii)    On the Second Cause of Action, that the debt that the Defendant, Laverne Campbell-Lodge, owes the Plaintiff is not dischargeable pursuant to *11 U.S.C. §523(a)(4)* as it was incurred as a result of Defendant's fraud and defalcation while acting in a fiduciary capacity on behalf of Plaintiff, in furtherance of Defendant's embezzlement of monies paid to Defendant for the benefit of Plaintiff, and in furtherance of her commission of larceny against Plaintiff;

(iii)    On the Third Cause of Action, that the debt that the Defendant, Laverne Campbell-Lodge, owes the Plaintiff is not dischargeable pursuant to *11 U.S.C. §523(a)(6)* as

19

it was incurred as a result of Defendant's willful and malicious injury to Plaintiff, and also as a result of her willful and malicious conversion of Plaintiff's property; and

(iv)    Such other and further relief as the Court deems just and proper, including, but not limited to, court costs, reasonable attorneys' fees and interest from September 22, 2203, at 12% per annum pursuant to the terms of the AOB and PFRF.

Dated: Uniondale, New York
February 27, 2025

SAHN WARD BRAFF COSCHIGNANO PLLC
*Attorneys for Plaintiff*

By: _____
DANIELÉ D. DE VOE
333 Earle Ovington Boulevard, Suite 601
Uniondale, New York 11553
(516)228-1300