UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re LAVERNE E. CAMPBELL-LODGE,

Case No. 25-22026-sab

Debtor.

Chapter 7

-------------------------------------------------------------------X
LONG ISLAND MINIMALLY
INVASIVE SURGERY, P.C.,
d/b/a NEW YORK BARIATRIC GROUP,

Plaintiff-Creditor,

Adv. No. 25-07003-sab

-against-

LAVERNE E. CAMPBELL-LODGE,

Defendant-Debtor.
-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT-DEBTOR'S MOTION FOR AN ORDER SHORTENING TIME AND TO AMEND HER ANSWER**

## STATEMENT OF FACTS

Plaintiff is a professional medical corporation organized and existing under the laws of the State of New York, with a principal place of business located at 125 Mineola Avenue, Suite 200, Roslyn, New York 11557. *(See Rockland County Summons and Verified Complaint ("State Court Verified Complaint"), ¶¶1-3, p. 1, attached hereto as Exhibit "1")* Defendant-Debtor, LAVERNE E. CAMPBELL-LODGE ("Defendant-Debtor" or "Defendant"), was and still is a resident of the State of New York, residing at 812 Tulip Drive, Valley Cottage, New York 10989. *(See State Court Verified Complaint, ¶4, attached hereto as Exhibit 1; Voluntary Petition, p. 2, attached hereto as Exhibit "2")*

On or about January 25, 2022, Defendant became indebted to Plaintiff after fraudulently inducing Plaintiff into performing elective medical procedures on her from January through April 2022 without requiring advance payment therefore. *(See State Court Verified Complaint, ¶¶5-22, attached hereto as Exhibit 1)*

Prior to performing the aforesaid services, Plaintiff advised Defendant that Plaintiff was an out-of-network provider and, as such, Defendant was responsible for the fair market value of the services rendered. *(See Exhibit 1, ¶6, p. 2)* Plaintiff likewise advised Defendant that her insurance carrier would reimburse her for the services rendered by Plaintiff to the extent that she had coverage by issuing a check to the Defendant for said reimbursement less any coinsurance, copayment and/or deductibles due pursuant to the terms of the Defendant's policy of insurance. *(See Exhibit 1, ¶7, p. 2)* Plaintiff further advised the Defendant that it would agree to accept the sum of money Defendant's insurance paid for Plaintiff's services for which Defendant had coverage so long as the Defendant forwarded onto Plaintiff all checks received for said services along with all co-payments, coinsurance, deductibles or other payments for which the defendant

was responsible pursuant to defendant's insurance contract. *(See Exhibit 1, ¶8, p. 2)*

Defendant fraudulently induced Plaintiff into performing services upon her without requiring advanced payment therefore by falsely representing to Plaintiff that, within seven (7) days of receipt, she would forward onto Plaintiff all checks she received from her insurance company for the services provided for which there was coverage, as well as all co-payments, co-insurance, deductibles or other payments for which the defendant was responsible pursuant to defendant's insurance contract. *(See Exhibit 1, ¶9, p. 2)*

To formalize her representations to Plaintiff into a writing, Defendant executed an Assignment of Insurance Benefits and Right of Recovery Form ("AOB") ratifying her assignment to Plaintiff of her interest in all checks received from her insurance company for the services rendered to her by Plaintiff in addition to her acknowledged obligation to remit payment for all co-insurance, co-payments, deductibles and other sums due pursuant to the terms of her policy of insurance. *(See Exhibit 1, ¶10, pp. 2-3)* Defendant also executed a Patient Financial Responsibility Form ("PFRF"), acknowledging her personal liability to remit payment for the services rendered, her obligation to reimburse plaintiff for all court costs and reasonable attorneys' fees incurred in recovering any outstanding balance and her agreement to pay 12% interest per annum on any balance outstanding more than thirty (30) days. *(See Exhibit 1, ¶11, p. 3)*

Defendant's insurance company issued several checks to Defendant as payment for the services sued upon herein, either in whole or in part. *(See Exhibit 1, ¶13, p. 3)* The Defendant's insurance company sent Explanations of Benefits to the Defendant for each date of service sued upon herein, explaining Defendant's responsibility therefore and how each check was to be applied where one was issued. *(See Exhibit 1, ¶14, p. 3)*

Defendant never intended to forward the insurance proceeds onto Plaintiff despite her representations to the contrary. *(See Exhibit 1, ¶12, p. 3)* Indeed, instead of forwarding the insurance checks onto Plaintiff, Defendant embezzled said funds by depositing the insurance checks into her own personal checking account and retaining said funds for her own personal use. *(See Exhibit 1, ¶15, p. 3)* Defendant likewise failed to remit payment for the deductible due pursuant to the terms of her insurance agreement. *(See Exhibit 1, ¶16, p. 4)*

At the time she deposited the checks into her own account, Defendant knew that she was obligated to forward said checks onto Plaintiff in addition to remitting payment for the deductible due pursuant to the terms of her insurance contract. *(See Exhibit 1, ¶19, p. 4)* It is respectfully submitted that Defendant knew when she willfully, intentionally, deliberately and maliciously deposited these checks into her personal checking account, rather than forwarding them onto Plaintiff, that she was committing embezzlement against plaintiff. *(See Exhibit 1, ¶20, p. 4)* Defendant likewise knew that by willfully, intentionally, deliberately and maliciously deposited these checks into her personal account, rather than forwarding them onto Plaintiff, that she was committing larceny against Plaintiff. *(See Exhibit 1, ¶21, p. 4)* Defendant further knew that, by willfully deposited these checks into her personal checking account, rather than forwarding them onto Plaintiff, that she was converting Plaintiff s assets. *(See Exhibit 1, ¶22, p. 4)*

Defendant's fraudulent intent cannot be disputed herein as she continued to solicit Plaintiff's services after cashing and keeping the first check while making repeated false assurances that the checks would be turned over knowing that she had already cashed the same. Plaintiff was induced into performing the elective procedures upon Defendant solely by virtue of Defendant's actual fraud, false pretenses, false representations, embezzlement, and/or larceny.

## PROCEDURAL HISTORY

After Plaintiff made repeated demands to induce the debtor to turnover the insurance checks along with all other sums due proved fruitless, an action was commenced in the Rockland County Supreme Court on August 10, 2022. *(See Exhibit 1)* The Defendant was personally served with the State Court Verified Complaint on September 15, 2022. *(See Affidavit of Personal Service, attached hereto as Exhibit "3")*

On the date she was served, the Defendant contacted the undersigned to discuss the Summons and Verified Complaint that she received and wherein she advised that she still allegedly had two of the seven checks that were issued by her carrier, totaling $126,994.00, without indicating which two checks she had. *(See Email string, attached hereto as Exhibit "3")* As a result of our conversation, the undersigned sent an email to the Defendant on that same day to provide her with the dates of service and the checks issued as well as copies of the invoices she received and the Agreements that she signed, advising her to contact her insurance company about the checks she received and to obtain copies of the cancelled checks and EOB's for the relevant dates of service. *(See Exhibit 3)* This email further indicated that nothing therein purported to nor did it extend her time to Answer the Verified Complaint that was served upon her. *(Id.)* On September 16, 2022, the Defendant sent an email acknowledging receipt of my email and asking that the Invoices be sent to her without the Agreements attached thereto. *(Id.)*

An additional copy of the Summons and Verified Complaint was mailed to the Plaintiff on September 23, 202**2**. After Plaintiff failed to turnover the two insurance checks in her possession and failed to timely interpose an answer, on September 22, 202**3** (or just under one year after she was served), Plaintiff filed for entry of a Judgment on Default rendered in favor of Plaintiff and against Defendant for the amount billed for the services rendered, totaling for

$199,451.37, which was granted by the Court that same day. *(See Judgment, attached hereto as Exhibit "5")* It is respectfully requested that this Court take judicial notice that the Defendant is collaterally estopped from disputing that this debt is dischargeable herein as a consequence of the foregoing State Court Default Judgment.[1]

This Adversary Proceeding arises from Defendant's voluntary Chapter 7 petition filed on January 13, 2025 shortly after Plaintiff served a wage garnishment upon Defendant's employer. *(See Exhibit 2)* It should be noted that the Debtor falsely reported her income in her Petition as only being approximately $75,000 despite the fact that it is public record that she makes in excess of $160,000.00 per year working as a Certified School Psychologist for the Nyack Union Free School District, which was verified by serving an Information Subpoena upon her employer. *(Compare Exhibit 2, p. 8 with https://govsalaries.com/search?state=new-york&employee=Laverne%20Campbell%20Lodge; see also https://www.seethroughny.net/payrolls)*[2] It should further be noted that Petitions are signed under penalty of perjury and this materially false statement of fact goes to the issue of the debtor's credibility herein.

Plaintiff commenced this Adversary Proceeding on February 27, 2025 to obtain a judgment declaring that Defendant's debt to Plaintiff is non-dischargeable, pursuant to *11 U.S.C. §§523(a)(2)*, *523(a)(4)*, and *523(a)(6)*, along with such other relief as the Court deems just and

---

[1] See Point I(c), *infra***Error! Main Document Only.**

[2] While this is the salary of public record and is the base reported by the Nyack School District, the Rockland County Sheriff's Office advised our office that Ms. Campbell-Lodge's total compensation is actually closer to $250,000.00 per year based upon what the school reported to them and the $2,100.00 collected from the first paycheck in relation to her garnishment, which constitutes 10% of her wages. Based upon the foregoing, it is unclear why Legal Aid is involved in this case as her income seems to be well above the threshold for legal aid.

proper, including, but not limited to awarding the attorneys' fees incurred in bringing the instant action as the underlying Agreements so require. *(ECF Doc. No. 1)* On March 27, 2025, issue was joined in this matter by Defendant filing an Answer wherein the Defendant admitted several paragraphs of the Adversary Complaint while denying information sufficient to form a belief as to the remainder and asserting several generic Affirmative Defenses. *(Doc. No. 4)* On April 2, 2025, Ms. Lodge apparently fired her first Bankruptcy Attorney, Michael A. Koplen, Esq. of Koplen Law Firm, who filed a letter on the docket so indicating to the Court. *(Bankr. ECF Doc. No. 12, attached hereto as Exhibit "6")*

On April 10, 2025, we thereafter served a proposed Scheduling Order on attorney Todd Cushner, Esq., of Cushner & Associates, debtor's *second* Bankruptcy Counsel. On April 11, 2025, the undersigned emailed Mr. Cushner providing the same breakdown that was previously provided to the Debtor in September 2022 and requesting that he provide copies of the cancelled insurance checks and EOBs so that we could hopefully resolve this matter. *(See Email, attached hereto as Exhibit "7")*

On May 5, 2025, this Court (Lane, J.) issued a Scheduling Order setting forth discovery deadlines and an end date for discovery. *(ECF Doc. No. 5)* At the September 23, 2025 Pre-Trial Conference, Defendant's counsel requested a discovery extension as he was having issues with the Debtor responding to his requests that she produce copies of the cancelled insurance checks and EOBs, to which Plaintiff agreed and the Court granted. On February 26, 2026, Defendant's counsel moved to withdraw due to a lack of communication with his client, which this Court denied for the reasons set forth on the record on March 12, 2026. *(ECF Doc. No. 11)*

On March 31, 2026, Plaintiff formally served formal discovery demands as it appeared that the documents we requested would not be forthcoming. More particularly, Plaintiff served a

Request for Interrogatories and Production of Documents pursuant to *FRBP §7026* and the *FRCP 33* and *34 (Doc. No. 28, Exhibit 1)*, alongside a Notice to Admit *(Doc. No. 28, Exhibit 2)*. Defendant failed to timely respond to Plaintiff's Notice to Admit and, as such, the contents of the same is deemed admitted.

Defendant also failed to respond to Plaintiff's discovery demands despite a Good Faith letter *(Doc. No. 28, Exhibit 3)*, multiple Pre-Trial Conferences, a Good Faith email *(Doc. No. 28, Exhibit 4)*, an unopposed Motion to Compel *(Doc. No. 28, Exhibit 5)*, and an Order dated July 7, 2026 directing Defendant to respond to Plaintiff's discovery demands within thirty (30) days *(Doc. No. 28, Exhibit 6).* Thus, on August 12, 2026, Plaintiff moved to strike Defendant's Answer due to her failure to respond to discovery, pursuant to *FRCP 37(b)(2)(A),* and seeking a judgment in favor of Plaintiff and against Defendant-Debtor on default. *(Doc. No. 28)* Defendant failed to timely oppose that motion.

Despite failing to timely answer the foregoing motion, on August 25, 2026, in-coming counsel for Defendant filed a very late Motion to Amend the Answer and a Motion seeking an Order Shortening Time as the Motion to Amend, only affording Plaintiff nine (9) days to respond, in violation of *Local Bankruptcy Rule 9006-1(a)* and the *FRCP*, which require at least fourteen (14) days' notice. For all of the reasons set forth below, Defendant's motion should be denied in its entirety.

## ARGUMENT

### I. THE MOTION TO SHORTEN TIME SHOULD BE DENIED FOR LACK OF GOOD CAUSE AND INSUFFICIENT NOTICE

*Local Bankruptcy Rule §9006-1(c)* mandates a minimum of fourteen (14) days' notice for motions. *FRBP §9006(c)(1)* states that "the court may—*for cause* and with or without a motion or notice—reduce the time". *(Emphasis added)* Here, Defendant filed the Motion to Amend the

Answer on August 25, 2026, noticing it for September 3, 2026, giving Plaintiff a mere nine (9) days to respond despite having asked this Court for leave to file such motion nearly a month prior. Defendant failed to provide any genuine cause why Plaintiff is not entitled to proper notice. Defendant claims the issue sought in the Motion to Amend is narrow, but it raises considerable legal issues that require research and analysis. Defendant also argues that there have been no Scheduling Orders issued in this action and that no discovery has been completed, both of which are objectively false.

Indeed, this Court has issued numerous Scheduling Orders and discovery closed on August 7, 2026. *(Doc. No. 28, Exhibit 8 and Exhibit 11)* Finally, Defendant argues that no dispositive motion has been filed with respect to the admissions Defendant seeks to change, which is refuted by Plaintiff's Motion to Strike and for Default Judgment pending with the Court when the aforementioned motion was filed. *(Doc. No. 28)*

Defendant sat on her original Answer for nearly seventeen months and cannot now manufacture an urgent crisis to force Plaintiff to respond on short notice. Because Defendant has failed to demonstrate any reason to bypass standard notice requirements, the motion to shorten time should be denied.

## II. DEFENDANT'S MOTION TO AMEND THE ANSWER SHOULD BE DENIED

While *Rule 15(a)(2)* does favor liberal amendment, the standard is not unlimited. Indeed, it is within the sound discretion of this Court to grant or deny leave to amend. *McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007); see e.g. Foman v. Davis, 371 U.S. 178, 182 (1962)*. A motion to amend should be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy, supra at 200*.

It is respectfully submitted in the case at bar that the burden was upon the Defendant to

affirmatively demonstrate that the Foman factors favor amendment, which she has failed to do. Indeed, the Debtor's self-serving Declaration fails to establish inadvertence sufficient to carry that burden of evidencing that amendment of the Answer filed by licensed counsel of record would be anything other than futile based upon the underlying State Court Default Judgment and based upon the fact that the Debtor is deemed to have admitted the allegations set forth in the Notice to Admit.

Defendant's papers likewise must fail because the Court should not give a proverbial do over when someone later regrets certain admissions made in an answer filed with the assistance of counsel just because a new attorney thinks it was a mistake to have admitted such facts that are not actually in dispute as a result of the foregoing. *See Melodrama Pub., LLC v. Santiago., 2013 WL 1700929 (SDNY 2013)* ***(Leave to amend denied where a defendant sought to withdraw repeated admissions of a crucial factual allegation****); In re Eagle Clothes, Inc., 12 B.R. 429 (SDNY 1981)* ***(The liberal amendment standard under Rule 15, as applied in bankruptcy adversary proceedings, does not operate as an automatic entitlement to amendment and that courts retain discretion to deny such motions based on the totality of the circumstances, including the timing of the request and the history of the litigation****.); see also Leier v. Lincoln Limousine Brokerage Inc., 2017 WL 2623853 (EDNY 2017)* ***(Reopening discovery is not an acceptable means of curing the prejudice caused by permitting a party to withdraw admissions, because significant delay and the need to expend additional resources are themselves forms of cognizable prejudice weighing against amendment.****); Harris Corp. v. McBride and Associates, Inc., 2002 WL 1677695 (WDNY 2002)* ***(Leave to amend denied where the defendant sought to retract a judicial admission of indebtedness on a key issue, characterizing the admission as a mere scrivener's error without offering any supporting evidence. The court found that the defendant's nine-month delay between filing the original answer and seeking amendment, combined with the***

***absence of any satisfactory explanation for that delay, constituted undue delay warranting denial. The court further emphasized that the substitution of new counsel does not justify amendment, particularly where the purported error was only discovered after the opposing party had moved for summary judgment, and that the proposed reversal on a central issue would require additional discovery and thereby prejudice the opposing party****.).*

Indeed, the Debtor's own self-serving declaration that she supposedly never reviewed or authorized the admissions is insufficient on its own to establish inadvertence. Clients are generally bound by the acts and omissions of their counsel, and a party seeking to retract judicial admissions bears a heavy burden to show they were made through inadvertence rather than deliberate strategy. The self-serving Declaration of the party seeking to undo the admission, standing alone, is the least reliable form of evidence because it is inherently self-interested. Plaintiff is entitled to discovery into the communications between the Debtor and both of her bankruptcy attorneys at the time, namely Michael Koplen, Esq., and Todd Cushner, Esq., before the Court accepts her unilateral characterization that the admissions were unauthorized. Furthermore, Campbell-Lodge's claim that she never reviewed the Answer before it was filed raises questions about her own diligence as a litigant, which should not be rewarded by permitting wholesale retraction of admissions that Plaintiff has relied upon as the operative pleading since March 27, 202**5**.

Furthermore, admissions to specific factual allegations central to the non-dischargeability claims, and a motion filed over seventeen (17) months after the original answer warrants heightened scrutiny. Indeed, the "freely given" standard does not operate as an automatic right to retract deliberate pleading choices, and the Court retains discretion to deny amendment where, as here, the admissions go to the very heart of the Plaintiff's fraud and inducement theory under *11 U.S.C. §§ 523(a)(2) and 523(a)(6)*. As such, it is respectfully submitted that the instant motion

should be denied in its entirety.

### A. Defendant's Motion to Amend the Answer Should be Denied as Defendant failed to put forth Good Reason to Amend

The Debtor falsely claims in her moving papers that no Scheduling Orders have been issued establishing a deadline for amendment of pleadings, thus, Debtor's motion is supposedly governed solely by *Rule 15(a)(2)* and does not require satisfaction of *Rule 16(b)(4)*'s good-cause standard, *citing Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000).* This argument must fail as several Scheduling Orders have been issued in this case and, in fact, the discovery end date lapsed (several times) before this motion was made. Even absent the foregoing, the passage of time in this case warrants denial of the instant motion.

Defendant's motion should further be denied as Defendant failed to put forth any good reason to support her request to amend. Defendant's sole justification for her seventeen-month delay and lack of diligence is that her former attorney supposedly made inadvertent admissions without her consent in the Answer. This argument fails as a matter of law and does not constitute a valid reason to grant leave under *FRCP 15(a)*.

Here, Defendant seeks to retract certain judicial admissions which are binding against her. *See Gibbs ex rel. Est. of Gibbs v. CIGNA Corp., 440 F.3d 571, 578 (2d Cir. 2006)* ***("Facts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout this litigation").*** It is a foundational principle of federal jurisprudence that a party voluntarily chooses her attorney as her legal representative and is fully bound by that attorney's acts, judicial admissions, and omissions. *Link v. Wabash R. Co., 370 U.S. 626, 633–34 (1962)("****each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.****")(internal quotations omitted)*; *see also Hoodho v. Holder, 558 F.3d 184, 192 (2d Cir. 2009)*; *S.E.C. v. McNulty, 137 F.3d 732, 739 (2d Cir. 1998);*

*Bailey v. Pataki, 952 F. Supp. 2d 626, 628 (SDNY 2013); In re Caritas Health Care, Inc., 435 B.R. 111, 116 (Bankr. EDNY 2010)*. This principle applies to debtors in bankruptcy proceedings. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 396–97 (1993)(**holding that both a party and their counsel's omissions must be excusable for the Court to overlook neglect**); In re Tronox Inc., 626 B.R. 688, 733 (Bankr. SDNY 2021), on reconsideration in part, 2022 WL 628097 (Bankr. SDNY 2022), and aff'd, 2023 WL 2744136 (SDNY 2023).*

Indeed, if a party could simply retain new counsel to undo judicial admissions, every litigant facing adverse facts would retain new counsel and demand a clean slate. Defendant's sole legal remedy for any alleged failure, unauthorized admission, or negligence by her prior counsel is an action against that attorney for legal malpractice—not the infliction of further prejudice on Plaintiff and continued delay of this litigation. Accordingly, Defendant is bound by the admissions in her Answer and the motion must be denied.

### B. Defendant's Motion to Amend the Answer Should Be Denied due to Undue Delay

Even if Defendant established good cause to amend the Answer, her motion for leave to amend should be denied due to unexcused, undue delay. Motions to amend may be granted where the amendment was proposed promptly after new facts were discovered because, under such circumstances, there has been no showing of undue delay. *Kiarie v. Dumbstruck, Inc., 473 F. Supp. 3d 350, 356 (SDNY 2020)*. Indeed, a party is not entitled to amend the pleadings where there has been an inordinate delay (*McCarthy, 482 F.3d at 200*) or where the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed (*Kiarie, 473 F. Supp. 3d at 356*).

Here, the Debtor's account of diligence is undermined by the timeline her own Declaration

establishes wherein she claims to have "discovered" the admissions "shortly after the Answer was filed on March 27, 2025," and that she sought correction from Cushner, who refused. Yet, she did not substitute Mr. Cushner out as counsel for another sixteen (16) months and the motion to amend was thereafter not filed until August 25, 2026—more than seventeen (17) months after the answer and, ***by her own admission***, well after she was aware of the alleged error. The fact that Attorney Adams was already representing her in a related foreclosure proceeding and was therefore accessible to her makes the delay in formally retaining him for this adversary proceeding less excusable, not more. The Debtor offers no explanation for why, once Mr. Cushner refused to correct the admissions, she waited so long to substitute in her foreclosure counsel to bring this motion. That unexplained gap is precisely the kind of dilatory conduct that *Foman* identifies as a basis to deny leave to amend. *See In re CIL Limited., 2018 WL 3031094 (SDNY 2018)* (***The proper baseline from which to measure delay in seeking leave to amend is the date on which the moving party possessed the facts underlying the proposed amendment and leave to amend is properly denied where the movant had knowledge of the relevant facts at the time of the original pleading***.); *McCarthy, 482 F.3d 184 at 200* (***denying leave to amend the pleadings where discovery had closed, summary judgment motions had been filed, and nearly two (2) years had passed since the filing of the original complaint).***

Moreover, Defendant does not base her motion on newly discovered evidence or facts that were unknown to her at the time the Answer was filed. *See Kiarie, 473 F. Supp. 3d at 356*. Rather, she attempts to retract facts that were fully within her knowledge at the inception of this action. Critically, Defendant gives no indication of *when* she discovered the supposed inadvertent admissions in her Answer. She simply states that she discovered them upon reviewing the Answer with Mr. Adams but provides no timeline whatsoever. *(Doc. No. 31, Campbell-Lodge Decl. ¶ 7)*

Her failure to state when she discovered the admissions is fatal to establishing whether she acted with any diligence. See Kiarie, *473 F. Supp. 3d at 359 ("**Finally, we note that even if [movant] first became aware of facts required to make allegations . . . in January 2020, [movant] offers no explanation for why he waited approximately four months to file the instant motion**")*.

Furthermore, Defendant does actually state that she did not review the Answer before it was filed despite current counsel's statements on the record today to the contrary. Indeed, what debtor merely states: "I did not review a draft of the Answer with [Mr. Cushner] paragraph by paragraph before it was filed, and he did not discuss with me, specifically, the admissions made." *(Doc. No. 31, Campbell-Lodge Decl. ¶ 2)* Nowhere in her Declaration does she actually claim that a copy of the proposed Answer was not provided to her prior to its filing or that Mr. Cushner failed to review it with her, but rather claims that he supposedly did not read it with her "paragraph by paragraph". That Defendant and her prior counsel did not review the draft "paragraph by paragraph" falls far short of showing that she never read the Answer herself or was unaware of the Answer's contents. For the foregoing reasons, Defendant's motion must be denied for undue delay.

### C. Defendant's Motion to Amend the Answer Should Be Denied as the Proposed Amendments are Futile

Even if the Court were to consider Defendant's proposed Amended Answer, the proposed amendment is futile. "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies . . ." *Empire Merchants, LLC v. Reliable Churchill LLLP, 902 F.3d 132, 139 (2d Cir. 2018) (quoting Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012))*. Here, Defendant seeks to amend her Answer to retract her admissions that she promised to forward all checks received from her insurance to Plaintiff within seven (7) days of receipt *(Doc. No. 1, ¶ 10; Doc. No. 4, ¶ 10)*, that she was aware of her obligation to forward said checks to Plaintiff *(Doc. No. 1, ¶ 16; Doc. No. 4, ¶ 16)*, and that Defendant should

not be able to avoid her obligations to pay for elective medical procedures and keep the money that the insurance gave her to pay for said procedures under the shield of bankruptcy *(Doc. No. 1, ¶ 38; Doc. No. 4, ¶ 38)*.

Allowing Defendant to amend the Answer and deny these allegations would be futile for several reasons. First, in support of the Motion to Amend, Defendant *admits* she reviewed and signed the AOB and PFRF. *(Doc. No. 31, Campbell-Lodge Decl. ¶ 6)* When Defendant executed the AOB, she assigned all rights and interest in any benefits payable for services rendered by Plaintiff over to Plaintiff and promised to pay Plaintiff for all charges incurred or alternatively, for all charges excess of the sums actually paid pursuant to said policies or plans. Defendant also admits to signing the PFRF, wherein she acknowledged her ultimate responsibility to remit payment for the services rendered by Plaintiff and agreed to be liable for Plaintiff's court costs, reasonable attorneys' fees, and interest at a rate of twelve percent (12%) per annum in the event of a default of her obligations thereunder. Essentially, Defendant does not deny that she received services from Plaintiff, was contractually obligated to pay for said services, and failed to do so. Indeed, Plaintiff is not seeking leave to amend the admissions in the Answer that she knew of her obligations to pay Plaintiff for the services rendered *(Doc. No. 4, ¶ 17)*, that she received invoices for the medical procedures showing the debt owed *(Doc. No. 4, ¶ 19)*, and that she received checks from her insurance company for the services Plaintiff rendered *(Doc. No. 4, ¶ 20)*.

Second, on or about March 31, 2026, Plaintiff served Defendant with a Notice to Admit pursuant to *FRCP 36*. Defendant failed to serve any response or objection to the Notice to Admit. Under *FRCP 36(a)(3)*, each matter of which an admission is requested is conclusively established as admitted by operation of law. Indeed, Defendant has admitted that she knew payment would be issued directly to her from her insurance company for the services rendered by Plaintiff *(Doc.*

*No. 28, Exhibit 2, ¶ 3)*; that Defendant knew she assigned all rights and interest in the insurance checks received for the services rendered over to Plaintiff, along with all co-insurance, copayments, deductibles, or other sums due pursuant to the terms of her insurance contract *(Doc. No. 28, Exhibit 2, ¶ 4)*; that she promised orally and in writing to forward the checks received to Plaintiff for the services rendered *(Doc. No. 28, Exhibit 2, ¶ 5)*; that she failed to do so *(Doc. No. 28, Exhibit 2, ¶ 10)*; and that she otherwise failed to pay for the services rendered by Plaintiff *(Doc. No. 28, Exhibit 2, ¶¶ 25, 39, 51, 85)*.

Because Defendant admitted that she signed the AOB and PFRF (acknowledging her obligation to pay for the services rendered by Plaintiff and that she signed over her rights and interests in the payments from her insurance company to Plaintiff) and because every factual allegation set forth in the Notice to Admit has been deemed admitted due to Defendant's failure in responding to discovery, modifying the Answer is futile. The underlying admissions Defendant attempts to retract which establish her liability remain admitted elsewhere in the record, rendering the proposed amended pleading a nullity.

Moreover, the evidence presented insufficient to establish the foregoing. Indeed, the Debtor’s own self-serving statement is the only evidence offered to support the inadvertence claim which is insufficient as courts are not required to accept a party's post-hoc attestation that her own attorney's admissions were unauthorized, particularly where the attorney has not submitted any declaration confirming the alleged miscommunication and the Debtor alleges has *refused* to correct the pleading. Second, the internal inconsistency argument cuts both ways: the answer's simultaneous denial of surrounding paragraphs and admission of Paragraphs 10 and 16 may reflect a deliberate litigation strategy to admit only what counsel believed was documentable while denying broader characterizations, rather than a drafting error. Third, the absence of the phrase

"seven days" from Exhibits 1 and 2 does not establish that no such oral promise was made. The nondischargeability claims under *§§ 523(a)(2)* and *523(a)(6)* can rest on oral representations and conduct, not solely on written agreements. The original answer's admission of Paragraph 10 may have reflected counsel's informed assessment of what the Debtor actually communicated to Plaintiff, regardless of what the written forms say.

Finally, it is important to note that all of the admissions are already established by the Default Judgment issued against the Debtor in the underlying action and she is collaterally estopped from disputing these facts herein. Indeed, unlike federal precedent, New York Law does not automatically exclude a default judgment from the application of collateral estoppel. *See Evans v. Ottimo, 469 F.3d 278, 282 (2d Cir. 2006); Wu v. Lin, 576 B.R. 32, 49 (Bankr. EDNY 2017); In re Smallwood, 2021 WL 4465560 (Bankr. EDNY 2021); Long Island Minimally Invasive Surgery P.C. d/b/a New York Bariatric Group v. Orslini (In re Orslini), 649 B.R. 427 (Bankr. EDNY 2023).* More particularly, "[u]nder New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Orslini, supra at 437, quoting Denton v. Hyman (In re Hyman), 502 F.3d 61, 65 (2d Cir. 2007), cert. denied, 555 U.S. 1097 (2009) (citations omitted); see e.g. Long Island Minimally Invasive Surgery P.C. d/b/a New York Bariatric Group v. McMahon (In re McMahon), Adv. Proc. No. 23-08045 (Bankr. EDNY 2023); Long Island Minimally Invasive Surgery P.C. d/b/a New York Bariatric Group v. Howe (In re Howe), Adv. Proc. No. 21-1021 (Bankr. WDNY 2021); Long Island Minimally Invasive Surgery P.C. d/b/a New York Bariatric Group v. Frazier (In re Nyesha Frazier), Adv. Proc. No. 21-08102 (Bankr. EDNY 2021); Long Island Minimally Invasive Surgery P.C. d/b/a New York Bariatric Group v. Cheri Hector-Boyd (In*

*re Cheri Hector-Boyd), Adv. Proc. No. 21-08162 (Bankr. EDNY 2021); Long Island Minimally Invasive Surgery P.C. d/b/a New York Bariatric Group v. Garard (In re Garard), Adv. Proc. No. 19-08085 (Bankr. EDNY 2019); Long Island Minimally Invasive Surgery P.C. d/b/a New York Bariatric Group v. Sanchez (In re Sanchez), Adv. Proc. No. 16-08162 (Bankr. EDNY 2016).* As such, any proposed amendment of the pleadings should be denied as the same would be futile.

**D. If Defendant is Granted Leave to Amend her Answer, Plaintiff will Suffer Undue Prejudice.**

Chapter 7 bankruptcy proceedings and associated adversary litigation are designed to move efficiently toward resolution, generally within six (6) months. This action was commenced on February 27, 2025—eighteen (18) months ago. The action has lingered far past the Court's performance standards and case management goals solely because Defendant intentionally ignored discovery deadlines, engaged in a persistent refusal to comply with basic discovery obligations, failed to oppose motions, and repeatedly ignored Court Orders. Granting leave to amend at this late stage would cause severe, undue prejudice to Plaintiff. Plaintiff has expended significant time and resources enforcing discovery rules, moving to compel, and ultimately filing a dispositive Motion to Strike Answer and for Default Judgment after Defendant's repeated non-compliance. Rewarding Defendant’s dilatory behavior by resetting the pleadings while Plaintiff's dispositive motion to strike her Answer is pending severely undermines Plaintiff’s position, rewards procedural maneuvering, and prejudices Plaintiff's right to a prompt resolution.

**WHEREFORE**, Plaintiff respectfully requests that this Court deny Defendant's Motion for an Order Shortening Time and seeking leave to Amend the Answer in its entirety, plus such other, further and different relief as may seem just, proper and equitable under the premises.

Dated: Uniondale, New York
September 2, 2026

Respectfully Submitted,

SAHN WARD BRAFF COSCHIGNANO PLLC
*Attorneys for Plaintiff-Creditor*

By: ________________________________
DANIELÉ D. DE VOE
333 Earle Ovington Boulevard, Suite 601
Uniondale, New York 11553
(516) 228-1300