UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re LAVERNE E. CAMPBELL-LODGE,<br><br>Debtor. | Case No. 25-22026-shl<br><br>Chapter 7 |
| LONG ISLAND MINIMALLY INVASIVE SURGERY, P.C., d/b/a NEW YORK BARIATRIC GROUP,<br><br>Plaintiff-Creditor,<br><br>-against-<br><br>LAVERNE E. CAMPBELL-LODGE,<br><br>Defendant-Debtor. | **NOTICE TO ADMIT**<br><br>Adv. No. 25-07003-shl |

**PLEASE TAKE NOTICE** that Plaintiff, LONG ISLAND MINIMALLY INVASIVE SURGERY, P.C. d/b/a NEW YORK BARIATRIC GROUP, by its attorneys, SAHN WARD BRAFF COSCHIGNANO PLLC, serves this first Notice to Admit upon Defendant-Debtor, LAVERNE E. CAMPBELL-LODGE, pursuant to Rule 36 of the Federal Rules of Civil Procedure. Defendant-Debtor is hereby requested to furnish to the undersigned a written admission of the following facts within thirty (30) days after service of this notice:

1. On or about January 25, 2022, Defendant-Debtor requested that Plaintiff perform certain elective medical procedures upon Defendant-Debtor.

2. Prior to performing any services upon Defendant-Debtor, Plaintiff advised Defendant-Debtor that it was an out-of-network provider under her policy of insurance.

3. Prior to rendering any medical services to Defendant-Debtor, Plaintiff advised Defendant-Debtor that her insurance company would issue payment directly to Defendant-

Debtor for the services to be rendered as a consequence of Plaintiff being an out-of-network provider.

4. Prior to rendering any medical services to Defendant-Debtor, Plaintiff advised Defendant-Debtor that it would not require advanced payment for the services to be rendered so long as Defendant-Debtor assigned all rights and interest in the insurance checks received for the services rendered over to Plaintiff, along with all co-insurance, copayments, deductibles, or other sums due pursuant to the terms of her insurance contract.

5. Defendant-Debtor promised orally and in writing to immediately forward onto Plaintiff all insurance checks received for the services rendered by Plaintiff, along with all sums for which Defendant-Debtor was liable pursuant to the terms of her insurance contract.

6. On March 23, 2022, Defendant-Debtor signed the Assignment of Insurance Benefits and Rights of Recovery Form ("AOB") attached hereto as Exhibit "1".

7. The signature on the lower portion of the AOB, attached hereto as Exhibit 1, above the words "Policy/Plan Participant" is Defendant-Debtor's signature.

8. The AOB, attached hereto as Exhibit 1, is a fair and accurate copy of the AOB that Defendant-Debtor executed on March 23, 2022.

9. Pursuant to the terms of the AOB, Defendant-Debtor transferred to Plaintiff all rights, title and interest in the insurance benefits to be paid for the services rendered by Plaintiff. *(See Exhibit 1)*

10. Pursuant to the terms of the AOB, Defendant-Debtor agreed to be liable for the full amount charged should she fail to forward any insurance checks onto Plaintiff and/or fail to remit payment for any sums for which she was responsible under the terms of her insurance policy. *(See Exhibit 1)*

11. Pursuant to the terms of the AOB, Defendant-Debtor agreed to be liable for reasonable attorneys' fees incurred by Plaintiff as a result of any default by Defendant-Debtor thereunder. *(See Exhibit 1)*

12. Prior to any services being rendered to Defendant-Debtor, on March 23, 2022, Defendant-Debtor also signed the Patient Financial Responsibility Form ("PFRF") attached hereto as Exhibit "2".

13. The signature on the lower portion of the second page of the PFRF, attached hereto as Exhibit 2, is the Defendant- Debtor's signature.

14. The PFRF, attached hereto as Exhibit 2, is a fair and accurate copy of the PFRF executed by the Defendant-Debtor on March 23, 2022.

15. By signing the PFRF, the Defendant agreed that interest would accrue at a rate of 12% per annum on all balances more than thirty (30) days outstanding. *(See Exhibit 2)*

16. By signing the PFRF, the Defendant agreed that she would be responsible for the full amount billed for the services rendered to her, plus interest, court costs and reasonable attorneys' fees, should she fail to forward any insurance checks received onto Plaintiff along with all sums for which she was responsible pursuant to the terms of her insurance policy. *(See Exhibit 2)*

17. Between February 11 and 13, 2022, Plaintiff performed certain medical procedures on Defendant-Debtor.

18. Plaintiff billed Defendant-Debtor's insurance company for the services rendered to Defendant-Debtor between February 11 and 13, 2022.

19. Defendant-Debtor's insurance company sent an Explanation of Benefits ("EOB") to Defendant-Debtor for the services Plaintiff rendered to Defendant between February 11 and

13, 2022, explaining what the insurance company paid and Defendant-Debtor's responsibility, if any.

20. On March 15, 2022, Defendant-Debtor's insurance company sent a check (Check No. 11168718) to Defendant-Debtor for the sum of $45,351.00 as partial payment for the services Plaintiff rendered to Defendant-Debtor between February 11 and 13, 2022 and applied $524.00 towards her deductible and $3,625.00 towards her co-insurance for the remaining balance due.

21. On March 24, 2022, Plaintiff emailed Defendant-Debtor about the $45,351.00 insurance check she received as payment for the services Plaintiff rendered to her between February 11 and 13, 20222 and to remind Defendant-Debtor of her obligation to immediately indorse and forward said check onto Plaintiff.

22. Defendant-Debtor knew that she had no right to keep the check issued by her insurance company as payment for the services that Plaintiff rendered to her between February 11 and 13, 2022.

23. Defendant-Debtor knew that she was required to indorse and immediately forward the insurance check received for the services rendered between February 11 and 13, 2022 onto Plaintiff along with all other sums due.

24. Defendant-Debtor cashed and/or otherwise negotiated the insurance check issued to pay for the services Plaintiff rendered to her between February 11 and 13, 2022 instead of forwarding the same onto Plaintiff.

25. The Defendant-Debtor did not pay for the services rendered to her between February 11 and 13, 2022.

26. After Defendant-Debtor received and cashed the insurance check issued to pay Plaintiff for the services rendered between February 11 and 13, 2022, Defendant-Debtor continued to solicit Plaintiff's services.

27. After Defendant-Debtor received and cashed the insurance check issued to pay Plaintiff for the services rendered between February 11 and 13, 2022, Defendant-Debtor did not advise Plaintiff that she had cashed the insurance check issued to pay for the services that Plaintiff rendered to Defendant between February 11 and 13, 2022.

28. After Defendant-Debtor received and cashed the insurance check issued to pay Plaintiff for the services rendered between February 11 and 13, 2022, Defendant-Debtor did not advise Plaintiff that she had no intention of honoring her obligations under the AOB and PFRF.

29. On March 23, 2022, Plaintiff performed certain medical procedures on Defendant-Debtor.

30. Plaintiff billed Defendant-Debtor's insurance company for the services rendered to Defendant-Debtor on March 23, 2022.

31. Defendant-Debtor's insurance company sent an Explanation of Benefits ("EOB") to Defendant-Debtor for the services Plaintiff rendered on March 23, 2022, explaining what the insurance company paid and Defendant-Debtor's responsibility, if any.

32. On March 31, April 13 and April 28, 2022, Defendant-Debtor's insurance company issued and sent three checks for the sum of $1,682.00 (Check No. 11278715), $492.00 (Check No. 11211949) and $151.00 (Check No. 21324100), respectively, for the services Plaintiff rendered to Defendant-Debtor on March 23, 2022.

33. On April 15, 2022, Plaintiff emailed Defendant-Debtor about the insurance checks she had received in relation to the services rendered to her between February and March 2022.

34. On April 18, 2022, Defendant-Debtor sent an email to Plaintiff claiming that she had not yet received the insurance checks issued to pay for the services Plaintiff rendered to her between February and March 2022.

35. On May 9, 2022, Plaintiff emailed Defendant-Debtor again about the insurance checks that she had received in relation to the services rendered to her between February and March 2022 and that she was required to immediately indorse and forward said checks onto Plaintiff.

36. Defendant-Debtor knew that she had no right to keep the checks issued by her insurance company as payment for the services rendered by Plaintiff on March 23, 2022.

37. Defendant-Debtor knew that she was required to indorse and immediately forward the insurance checks received for the services rendered on March 23, 2022 onto Plaintiff along with all other sums due.

38. While Defendant-Debtor turned over Check No. 21324100 for $151.00, Defendant-Debtor cashed and/or otherwise negotiated the remaining two insurance checks issued to pay for the services Plaintiff rendered to her on March 23, 2022 instead of forwarding the same onto Plaintiff.

39. The Defendant-Debtor did not pay for the services rendered to her on March 23, 2022.

40. After Defendant-Debtor received and cashed the insurance checks issued to pay Plaintiff for the services rendered between February 11 and March 23, 2022, Defendant-Debtor continued to solicit Plaintiff's services.

41. After Defendant-Debtor received and cashed the insurance checks issued to pay Plaintiff for the services rendered between February 11 and March 23, 2022, Defendant-Debtor

did not advise Plaintiff that she had cashed the insurance checks issued to pay for the services that Plaintiff rendered to Defendant between February 11 and March 23, 2022.

42. After Defendant-Debtor received and cashed the insurance checks issued to pay Plaintiff for the services rendered between February 11 and March 23, 2022, Defendant-Debtor did not advise Plaintiff that she had no intention of honoring her obligations under the AOB and PFRF.

43. On March 28, 2022, Plaintiff performed certain medical procedures on Defendant-Debtor.

44. Plaintiff billed Defendant-Debtor's insurance company for the services rendered to Defendant-Debtor on March 28, 2022.

45. Defendant-Debtor's insurance company sent an Explanation of Benefits ("EOB") to Defendant-Debtor for the services Plaintiff rendered on March 28, 2022, explaining what the insurance company paid and Defendant-Debtor's responsibility, if any.

46. On April 5, 2022, Defendant-Debtor's insurance company issued and sent a check (Check No. 11221909) for the sum of $10,719.00 for the services Plaintiff rendered to Defendant-Debtor on March 28, 2022.

47. On April 20, 2022, Plaintiff emailed Defendant-Debtor about the insurance check she received in relation to the services Plaintiff rendered to her on March 28, 2022 and to remind her of her obligation to immediately indorse and forward said check onto Plaintiff.

48. Defendant-Debtor knew that she had no right to keep the check issued by her insurance company as payment for the services rendered by Plaintiff on March 28, 2022.

49. Defendant-Debtor knew that she was required to indorse and immediately forward onto Plaintiff the insurance check received for the services rendered on March 28, 2022 along with all other sums due.

50. Defendant-Debtor cashed and/or otherwise negotiated the insurance check issued to pay for the services Plaintiff rendered to her on March 28, 2022 instead of forwarding the same onto Plaintiff.

51. The Defendant-Debtor did not pay for the services rendered to her on March 28, 2022.

52. After Defendant-Debtor received and cashed the insurance checks issued to pay Plaintiff for the services rendered between February 11 and March 28, 2022, Defendant-Debtor continued to solicit Plaintiff's services.

53. After Defendant-Debtor received and cashed the insurance checks issued to pay Plaintiff for the services rendered between February 11 and March 28, 2022, Defendant-Debtor did not advise Plaintiff that she had cashed the insurance checks issued to pay for the services that Plaintiff rendered between February 11 and March 28, 2022.

54. After Defendant-Debtor received and cashed the insurance checks issued to pay Plaintiff for the services rendered between February 11 and March 28, 2022, Defendant-Debtor did not advise Plaintiff that she had no intention of honoring her obligations under the AOB and PFRF.

55. On March 29, 2022, Plaintiff performed certain medical procedures on Defendant-Debtor.

56. Plaintiff billed Defendant-Debtor's insurance company for the services rendered to her on March 29, 2022.

57. Defendant-Debtor's insurance company sent an Explanation of Benefits ("EOB") to Defendant-Debtor for the services Plaintiff rendered on March 29, 2022, explaining what the insurance company paid and Defendant-Debtor's responsibility, if any.

58. Defendant-Debtor's insurance company issued and sent a check for the sum of $383.00 for the services Plaintiff rendered to Defendant-Debtor on March 29, 2022.

59. Defendant-Debtor knew that she had no right to keep the check issued by her insurance company as payment for the services rendered by Plaintiff on March 29, 2022.

60. Defendant-Debtor knew that she was required to indorse and immediately forward the insurance check received for the services rendered on March 29, 2022 onto Plaintiff along with all other sums due.

61. Defendant-Debtor cashed and/or otherwise negotiated the insurance check issued to pay for the services Plaintiff rendered to her on March 29, 2022 instead of forwarding the same onto Plaintiff.

62. After Defendant-Debtor received and cashed the insurance checks issued to pay Plaintiff for the services rendered between February 11 and March 29, 2022, Defendant-Debtor continued to solicit Plaintiff's services.

63. After Defendant-Debtor received and cashed the insurance checks issued to pay Plaintiff for the services rendered between February 11 and March 29, 2022, Defendant-Debtor did not advise Plaintiff that she had cashed the insurance checks issued to pay for the services that Plaintiff rendered to Defendant between February 11 and March 29, 2022.

64. After Defendant-Debtor received and cashed the insurance checks issued to pay Plaintiff for the services rendered between February 11 and March 29, 2022, Defendant-Debtor

did not advise Plaintiff that she had no intention of honoring her obligations under the AOB and PFRF.

65. On April 20, 2022, Plaintiff performed surgery on Defendant-Debtor.

66. Plaintiff billed Defendant-Debtor's insurance company for the surgery performed on Defendant-Debtor on April 20, 2022.

67. Defendant-Debtor's insurance company sent an Explanation of Benefits ("EOB") to Defendant-Debtor for the surgery Plaintiff performed on April 20, 2022, explaining what the insurance company paid and Defendant-Debtor's responsibility, if any.

68. On May 13, 2022, Defendant-Debtor's insurance company sent a check (Check No. 11315904) to Defendant-Debtor for the sum of $68,750.00 for the surgery Plaintiff performed on April 20, 2022.

69. On May 18, 2022, Plaintiff emailed Defendant-Debtor about the insurance check she had received in relation to the surgery performed upon her on April 20, 2022 and to remind her that she was required to immediately indorse and forward said check onto Plaintiff.

70. On May 19, 2022, Plaintiff emailed Defendant-Debtor about the insurance checks she had received in relation to the services Plaintiff rendered to her between February and April 2022, and to remind her that she was required to immediately indorse and forward said check onto Plaintiff.

71. Defendant-Debtor knew that she had no right to keep the check issued by her insurance company as payment for the services rendered by Plaintiff on April 20, 2022.

72. Defendant-Debtor knew that she was required to indorse and immediately forward the insurance check received for the services rendered on April 20, 2022 onto Plaintiff along with all other sums due.

73. Defendant-Debtor cashed and/or otherwise negotiated the insurance check issued to pay for the services Plaintiff rendered to her on April 20, 2022 instead of forwarding the same onto Plaintiff.

74. Between March and July 2022, Plaintiff sent Statements to Defendant-Debtor each time it learned that Defendant-Debtor had received an insurance check, indicating thereon that she had received a check that needed to be forwarded onto Plaintiff.

75. On June 2, 2022, Plaintiff called and emailed Defendant-Debtor about the insurance checks she had received that belonged to Plaintiff and demanding that she immediately indorse and forward the same onto Plaintiff.

76. On June 2, 2022, Defendant-Debtor emailed in response thereto that she forwarded one insurance check onto Plaintiff, which Plaintiff confirmed and demanded that she immediately forward the balance of the checks onto Plaintiff.

77. On June 16, 2022, Plaintiff spoke with Defendant-Debtor about the several insurance checks that she had not indorsed and forwarded onto Plaintiff at which time Defendant-Debtor became belligerent and hung up on Plaintiff.

78. On June 30, 2022, Plaintiff again called and emailed Defendant-Debtor about the insurance checks that she had failed to indorse and forward onto Plaintiff.

79. Defendant-Debtor received the Statement, dated July 7, 2022 and marked "Final Notice", that is attached hereto as Exhibit "2".

80. On July 7, 2022, Plaintiff sent a Final Statement to Defendant-Debtor again noting that she had received the insurance checks to pay for the services that Plaintiff rendered to her, which she was obligated to indorse and forward onto Plaintiff.

81. The Statement, attached hereto as Exhibit 3, is a fair and accurate copy of the Statement that Defendant-Debtor received on or about July 7, 2022.

82. Defendant-Debtor never objected to the contents of the Statement she received on or about July 7, 2022.

83. On July 29, 2022, Plaintiff called Defendant-Debtor regarding the insurance checks she had received to pay for the services Plaintiff rendered to her and Defendant-Debtor pretended that she could not hear Plaintiff then ended the call.

84. On July 29, 2022, Defendant-Debtor emailed Plaintiff about making payment arrangements to repay the money she owed Plaintiff as a consequence of Defendant-Debtor keeping and cashing the insurance checks issued to pay Plaintiff.

85. Defendant-Debtor has made no payments towards the $208,248.99 outstanding as reflected in the Statement attached hereto as Exhibit 3.

Dated: Uniondale, New York
March 13, 2026

SAHN WARD BRAFF COSCHIGNANO PLLC
*Attorneys for Plaintiff-Creditor*

By: ______________________________
DANIELÉ D. DE VOE
333 Earle Ovington Boulevard, Suite 601
Uniondale, New York 11553
(516) 877-2525

TO: CUSHNER & ASSOCIATES, P.C.
*Attorneys for Defendant-Debtor*
399 Knollwood Road, Suite 205
White Plains, New York 10603
(914) 600-5502

# Exhibit "1"

# Assignment of Insurance Benefits and Right of Recovery

Primary Information:

Policy/Plan Name: NYSHIP EMPIRE MEDICAL GROUP

Policy/Plan I.D. Number: 890277054

Secondary Information:

Policy/Plan Name: No secondary insurance on file.

Policy/Plan ID Number:

In consideration of services rendered, I, Laverne Campbell-Lodge hereby transfer to New York Bariatric Group/Long Island Minimal Invasive PC./ Naveem Ballem LLC (provider) all rights, title and interest in benefits payable for services rendered by this medical provider or practice provided in the above mentioned policy on said policies of insurance or employee benefit plans, but shall not be construed to be an obligation on the part the medical provider or practice to pursue any right or recovery. Provided, however, this assignment and transfer shall not take away my standing to make claim, appeal claim denials or sue for benefits individually should coverage be denied by insurance carriers or employee benefit plan. I hereby authorize the insurance companies or employee benefit plans listed above to pay directly to this medical provider or practice all benefits due under said policy or plan by reasonable services rendered. I will pay this medical provider or practice for all charges incurred or alternatively, for all charges excess of the sums actually paid pursuant to said policies or plans. A copy of this authorization shall be considered effective and valid as the original.

Designation of Authorized Representative-I hereby designate this medical provider or practice to act as my representative when dealing with insurance plans or plan benefits appeal in the event of a coverage denial. I understand that this medical provider and or practice have the right to decline or accept this designation at the time a denial is received. If this medical provider and or practice accept this designation, the outcome of any appeal is not guaranteed and I agree to pay all charges which remain unpaid by the insurance carrier or welfare benefit plan regardless of the outcome of any appeal.

I understand that in the event that my unpaid account goes to an outside collection agency or law firm, I will be made responsible for all collection agency fees and/or reasonable attorney's fees incurred during the collection process.



Signed 03/23/2022

(Policy/Plan Participant)

Accepted at 3/25/2022 10:58 AM by MMORIGLIO

# Exhibit "2"

# Patient Financial Responsibility Form

We are committed to meeting your healthcare needs and keeping your insurance and other financial arrangements as simple as possible. In order to accomplish this in a cost-effective manner for all our patients, we ask that you adhere to our practice's financial policy. By signing below, you are agreeing to its terms.

1. I am ultimately responsible for payment of charges for services I receive from this practice including those covered by my insurance. This practice will submit claims for reimbursement with my insurance provider; however, all payment responsibility is ultimately mine.

2. Some immediate payment may be expected at the time of service. This may include a co-pay and additional payment if this practice determines that the cost of my visit today will not be reimbursed by my insurance provider. This often happens if my deductible is not yet satisfied.

3. You are responsible for knowing your insurance policy. For example, you will be responsible for any charges if any of the following apply: (i) your health plan requires prior authorization or referral by a primary care physician (PCP) before receiving services at New York Bariatric Group (NYBG), and you have not obtained such an authorization or referral; (ii) you receive services in excess of such authorization or referral; (iii) your health plan determines that the services you received at NYBG are not medically necessary and/or not covered by your insurance plan; (iv) your health plan coverage has lapsed or expired at the time you receive services at New York Bariatric Group; or (v) you have chosen not to use your health plan coverage. If you are not familiar with your plan coverage, we recommend you contact your carrier or plan provider directly.

4. This practice may deny service or charge a service fee for failure to pay a co-pay or any outstanding balance at the time of service.

5. It is my responsibility to provide my current address, telephone number, email address, and insurance information at each visit.

6. I agree to provide the above practice and/or its designated payment agent with my debit/credit card information. **Failure to provide a valid credit card may result in the patient incurring a $25 statement balance fee**.

7. I understand that my signature and payment information will be maintained on file for future use by the practice. The applicable payment card or bank account number will be truncated and "tokenized" by the payment agent in order to help maintain the security of my payment information.

8. If warranted, this practice may offer the option of paying my share of costs via an automated payment plan. I understand that I may incur some interest expense beyond my balance in exchange for this convenience. I can avoid interest charges by paying my bill immediately if required or by its due date.

9. All appointments must be cancelled with at least 24 hours notice. Failure to notify office of cancellations or no-show will incur a no-show fee of $100 for missed visits and $250 for missed endoscopy and/or colonoscopy.

**10. I authorize the above practice and/or its designated payment agent to apply charges to my payment card and/or bank account for all amounts owed to the practice for medical visits, procedures or supplies, including (i) amounts agreed as part of a payment plan, (ii) copayments, (iii) coinsurance (after application of insurance proceeds), (iv) amounts not covered by insurance and/or (v) fees (if applicable) charged by the practice for failure to keep a scheduled appointment (potentially including a $250 fee for a missed endoscopy and/or colonoscopy appointment) or provide timely notice of appointment cancellation.**

Accepted at 3/25/2022 10:58 AM by MMORIGLIO

11. In the case of a patient balance that is not satisfied by a charge to my payment method or a payment plan, I may receive a monthly statement for any outstanding balance. I am responsible for paying this balance by its due date in order to avoid paying possible interest on the balance. If any balance on your account is over thirty (30) days past due, your account will be in default and may be referred to a collection agency. The balance of any account not paid within thirty (30) days will begin to accrue interest at the rate of 1.0% per month or the maximum allowed by applicable law, whichever is lower. Failure to satisfy any outstanding balances may also result in a Withdrawal of Care.

12. I will not be provided with advance notice of payments authorized hereunder for transactions up to an amount specified by me. I will be provided with a courtesy notification prior to processing any payment in excess of such amount. Transaction receipts will be maintained in the patient file or will be emailed to me if I provide and maintain a valid email address.

13. Should collection proceedings or other legal action become necessary to collect an overdue or delinquent account, you understand that NYBG has the right to disclose to an outside collection agency or attorney all relevant personal and account information necessary to collect payment for services rendered. You are responsible for all costs of collection including, but not limited to: (i) late fees and charges and interest due as a result of such delinquency; (ii) all court costs and disbursements (but only to the extent allowed by law); and (iii) reasonable attorney's fees and/or collection fee to be charged under separate agreement with a third-party collections agency, either as a flat fee or computed as a percentage of the total balance due up to the maximum allowed by applicable law, and to be added to the outstanding balance due and owing at the time of the referral to the third party collection agency. You acknowledge that any such interest assessed on the account will be a late fee as a result of default or delinquency on your account, and is not deemed interest as part of a credit transaction. If your account is referred to a collection agency, attorney, court, or the past due status is reported to a credit reporting agency, it may have an adverse effect on your credit history; and related portions of your account, including the fact that you received treatment at our offices, may become a matter of public record.

**Patient: Laverne Campbell-Lodge**

**Cardholder Name: Laverne Campbell lodge**

**Cardholder Signature:**



Signed 03/23/2022

Accepted at 3/25/2022 10:58 AM by MMORIGLIO

# Exhibit "3"

**NEW YORK BARIATRIC GROUP**
125 MINEOLA AVE
STE 200
ROSLYN HEIGHTS, NY 11577-2023
Phone #: (516) 616-5500 x4

# Statement

| Statement Date | Payment Due | Account # |
|---|---|---|
| July 7, 2022 | $204,248.99 | 207385 |
| Check # | Show Amount Paid Here $ | |

| Addressee: | Please Remit To: |
|---|---|
| LAVERNE CAMPBELL-LODGE<br>812 TULIP DRIVE<br>VALLEY COTTAGE, NY 10989 | **NEW YORK BARIATRIC GROUP**<br>125 MINEOLA AVE<br>STE 200<br>ROSLYN HEIGHTS, NY 11577-2023 |

Please detach and return top portion with your payment

**Messages**

PLS MAKE CHECKS PAYABLE to NEW YORK BARIATRIC GROUP; PAY ONLINE: NYBGpay.com PLS CALL 516-616-5500, OPT 4 FOR QUESTIONS
***FINAL STATEMENT***

| Date | Procedure | Patient / Provider | Amount |
|---|---|---|---|
| **02/11/2022** | **SLP STDY UNATTND W/ANALYSIS** | **CAMPBELL-LODGE,LAVERNE / SCHILERO** | **$18,150.00** |
| 03/24/2022 | PAYMENT - INSURANCE | | $0.00 |
| | *Payment made to patient/insured/responsible party.* | | |
| | Insurance Pending: $0.00 | Patient Balance: $18,150.00 | |
| **02/12/2022** | **SLP STDY UNATTND W/ANALYSIS** | **CAMPBELL-LODGE,LAVERNE / SCHILERO** | **$18,150.00** |
| 03/24/2022 | PAYMENT - INSURANCE | | $0.00 |
| | *Payment made to patient/insured/responsible party.* | | |
| | Insurance Pending: $0.00 | Patient Balance: $18,150.00 | |
| **02/13/2022** | **SLP STDY UNATTND W/ANALYSIS** | **CAMPBELL-LODGE,LAVERNE / SCHILERO** | **$18,150.00** |
| 03/24/2022 | PAYMENT - INSURANCE | | $0.00 |
| | *Payment made to patient/insured/responsible party.* | | |
| | Insurance Pending: $0.00 | Patient Balance: $18,150.00 | |
| **03/28/2022** | **ANESTHESIA UPPER GI VISUALIZE** | **CAMPBELL-LODGE,LAVERNE / GAUDIO** | **$8,712.00** |
| 04/20/2022 | PAYMENT - INSURANCE | | $0.00 |
| | *Payment made to patient/insured/responsible party.* | | |
| | Insurance Pending: $0.00 | Patient Balance: $8,712.00 | |

| | Current | 30 Day | 60 Day | 90 Day | 120 Day | Total Balance |
|---|---|---|---|---|---|---|
| **Insurance:** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **Family:** | $666.00 | $133,704.99 | $15,428.00 | $54,450.00 | $0.00 | $204,248.99 |
| | | | | | **Unapplied:** | $0.00 |
| | | | | | **Payment Due:** | $204,248.99 |

**FINAL NOTICE**
This is the last statement that will be sent to you. Unless paid at once the account will be turned over for collection.

**Please Remit Top Portion To:**

**NEW YORK BARIATRIC GROUP**
125 MINEOLA AVE
STE 200
ROSLYN HEIGHTS, NY 11577-2023
Phone #: (516) 616-5500 x4

| Responsible Party | Statement Date | Account # |
|---|---|---|
| LAVERNE CAMPBELL-LODGE | July 7, 2022 | 207385 |

**NEW YORK BARIATRIC GROUP**
125 MINEOLA AVE
STE 200
ROSLYN HEIGHTS, NY 11577-2023
Phone #: (516) 616-5500 x4

# Statement

| Statement Date | Payment Due | Account # |
|---|---|---|
| July 7, 2022 | $204,248.99 | 207385 |

| Date | Procedure | Patient / Provider | Amount |
|---|---|---|---|
| **03/28/2022** | **EGD DIAGNOSTIC BRUSH WASH** | **CAMPBELL-LODGE,LAVERNE / GODSHALL** | **$6,050.00** |
| 04/12/2022 | PAYMENT - ELECTRONIC | | $0.00 |
| | *Payment made to patient/insured/responsible party.* | | |
| | Insurance Pending: $0.00 | Patient Balance: $6,050.00 | |
| **03/29/2022** | **EST PT- LOW- MOD, 20-29 MINS** | **CAMPBELL-LODGE,LAVERNE / GODSHALL** | **$666.00** |
| 04/12/2022 | PAYMENT - ELECTRONIC | | $0.00 |
| | *Payment made to patient/insured/responsible party.* | | |
| | Insurance Pending: $0.00 | Patient Balance: $666.00 | |
| **03/23/2022** | **NP OV- MOD, 30-44 MINS** | **CAMPBELL-LODGE,LAVERNE / CHADI** | **$666.00** |
| 07/07/2022 | PAYMENT - INSURANCE | | $0.00 |
| | *Payment made to patient/insured/responsible party.* | | |
| | Insurance Pending: $0.00 | Patient Balance: $666.00 | |
| **03/23/2022** | **STRESS TTE COMPLETE** | **CAMPBELL-LODGE,LAVERNE / CHADI** | **$6,050.00** |
| 05/09/2022 | PAYMENT - INSURANCE | | $0.00 |
| | *Payment made to patient/insured/responsible party.* | | |
| | Insurance Pending: $0.00 | Patient Balance: $6,050.00 | |
| **03/23/2022** | **ELECTROCARDIOGRAM COMPLETE** | **CAMPBELL-LODGE,LAVERNE / CHADI** | **$605.00** |
| 05/09/2022 | PAYMENT - INSURANCE | | $0.00 |
| | *Payment made to patient/insured/responsible party.* | | |
| | Insurance Pending: $0.00 | Patient Balance: $605.00 | |
| **04/20/2022** | **LAP SLEEVE GASTRECTOMY** | **CAMPBELL-LODGE,LAVERNE / GODSHALL** | **$60,500.00** |
| 05/18/2022 | PAYMENT - INSURANCE | | $0.00 |
| | *Payment made to patient/insured/responsible party.* | | |
| | Insurance Pending: $0.00 | Patient Balance: $60,500.00 | |
| **04/20/2022** | **EGD DIAGNOSTIC BRUSH WASH** | **CAMPBELL-LODGE,LAVERNE / GODSHALL** | **$6,050.00** |
| 05/18/2022 | PAYMENT - INSURANCE | | $0.00 |
| | *Payment made to patient/insured/responsible party.* | | |
| | Insurance Pending: $0.00 | Patient Balance: $6,050.00 | |
| **04/20/2022** | **LAP SLEEVE GASTRECTOMY** | **CAMPBELL-LODGE,LAVERNE / SANCHEZ** | **$60,499.99** |
| 05/19/2022 | PAYMENT - INSURANCE | | $0.00 |
| | *Payment made to patient/insured/responsible party.* | | |
| | Insurance Pending: $0.00 | Patient Balance: $60,499.99 | |

| | Current | 30 Day | 60 Day | 90 Day | 120 Day | Total Balance |
|---|---|---|---|---|---|---|
| **Insurance:** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **Family:** | $666.00 | $133,704.99 | $15,428.00 | $54,450.00 | $0.00 | $204,248.99 |
| | | | | | **Unapplied:** | $0.00 |
| | | | | | **Payment Due:** | $204,248.99 |

**Please Remit Top Portion To:**

**NEW YORK BARIATRIC GROUP**
125 MINEOLA AVE
STE 200
ROSLYN HEIGHTS, NY 11577-2023
Phone #: (516) 616-5500 x4

| Responsible Party | Statement Date | Account # |
|---|---|---|
| LAVERNE CAMPBELL-LODGE | July 7, 2022 | 207385 |